1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 BENARDO GATICA CARRASCO,              Case No.  1:20-cv-01394-DAD-HBK

12          Plaintiff,                    FINDINGS AND RECOMMENDATIONS TO
                                          AFFIRM COMMISSIONER OF SOCIAL
13      v.                                SECURITY[2]

14 KILOLO KIJAKAZI,                       FOURTEEN-DAY OBJECTION PERIOD
   COMMISSIONER OF SOCIAL
15 SECURITY,                              (Doc. No.  19)

16          Defendant.[1]

17

18

19       Plaintiff Bernardo Gatica Carrasco seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21 supplemental security income and disability insurance benefits pursuant to the Social Security

22 Act.  (Doc. No. 1).  This matter is currently before the undersigned on the parties' briefs, which

23 were submitted without oral argument.  (Doc. Nos. 19, 20, 21).  For the reasons stated, the

24 undersigned RECOMMENDS that the Commissioner's decision be affirmed.

25 _____

26 [1] This action was originally filed against Andrew Saul in his capacity as the Commissioner of Social
   Security.  (*See* Doc. 1 at 1).  The Court has substituted Kilolo Kijakazi, who has since been appointed the
   Acting Commissioner of Social Security, as the defendant.  *See* Fed. R. Civ. P. 25(d).
27

28 [2]This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
   302(c)(15) (E.D. Cal. 2019).

## I.  JURISIDICTION

Plaintiff filed for supplemental security income and disability insurance benefits on December 7, 2015, alleging an onset date of January 20, 2012.  (Doc. No. 13-2 ("AR") at 25).  Benefits were denied initially (*id.* at 22-37) and upon reconsideration (*id.*).  Plaintiff appeared for a hearing before Administrative Law Judge Scot Septor ("ALJ") on January 3, 2019.  (*Id.* at 44-81).  Plaintiff was represented by counsel and testified during the hearing.  (*Id.*).  During the hearing, the ALJ granted Plaintiff's motion to amend the date of his alleged onset for a closed time beginning on February 1, 2013 through December 13, 2017.  (*Id.* at 25).  The ALJ denied benefits (*id.* at 22-37) and the Appeals Council denied review (*id.* at 6-7).  The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.  BACKGROUND

The facts of this case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized.

Plaintiff was 54 at the time he filed for disability and supplemental income benefits in 2015.  (Doc. No. 13-2 at 25, 258).  Plaintiff had a tenth-grade education.  (*Id.* at 308).  Prior jobs included a high school coach, janitor, and security guard at Kmart.  (*Id.* at 309).  During the hearing, Plaintiff testified he also had prior employment as a loss prevention employee at a grocery store, monitored security screens, and worked as a bouncer.  (*Id.* at 53-54).  At the time of the hearing, Plaintiff was employed at Home Depot on a part-time basis and had a lifting restriction, not to lift over 25 pounds.  (*Id.* at 65).  Plaintiff testified to experiencing anxiety, which "over the years he's just learned to manage," and back pain.  (*Id.* at 57).  When the ALJ asked specifically about the closed period (February 2013 to December 2017) Plaintiff testified it was primarily his anxiety and back pain that kept him from working during that time.  (*Id.* at 63).

## III.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

1   is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial

2   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

3   conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

4   equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and

5   citation omitted). In determining whether the standard has been satisfied, a reviewing court must

6   consider the entire record as a whole rather than searching for supporting evidence in isolation.

7   *Id*.

8       In reviewing a denial of benefits, a district court may not substitute its judgment for that of

9   the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible

10  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11  2008). Further, a district court will not reverse an ALJ's decision on account of an error that is

12  harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate

13  nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's

14  decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

15  U.S. 396, 409-10 (2009).

16                    **IV.  FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

17      A claimant must satisfy two conditions to be considered "disabled" within the meaning of

18  the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful

19  activity by reason of any medically determinable physical or mental impairment which can be

20  expected to result in death or which has lasted or can be expected to last for a continuous period

21  of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the

22  claimant's impairment must be "of such severity that he is not only unable to do his previous

23  work[,] but cannot, considering his age, education, and work experience, engage in any other kind

24  of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A),

25  1382c(a)(3)(B).

26      The Commissioner has established a five-step sequential analysis to determine whether a

27  claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

28  At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

4

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.  ALJ'S FINDINGS

Considering Plaintiff sought disability and disability insurance benefits, the ALJ had to consider whether Plaintiff's earning records acquired sufficient quarters of coverage to remain insured through December 31, 2013.  (AR at 25).  The ALJ noted in order to be entitled to a period of disability and disability insurance benefits Plaintiff would have to show disability on or before December 31, 2013.[3]  (*Id.*).

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 1, 2013, the alleged onset date.  (*Id.* at 27).  At step two, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, degenerative changes and osteophytic spurring of the right knee, spina bifida, anxiety, and depression.  (*Id.* at 28).

---

[3]As noted above, prior to the hearing, Plaintiff's counsel moved to amend the alleged onset date to a closed period, which the ALJ granted, thereby permitting Plaintiff to allege disability onset from February 1, 2013 to December 13, 2017. (Doc. No. 13-2 at 25).

As to step three, the ALJ found the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impartments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925.  (*Id*.).  Turning to the residual functional capacity ("RFC"), the ALJ determined Plaintiff could: "perform medium work as defined by 20 CFR 404.1567(c) and 416.967(c).  The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  He would be capable of performing jobs of a non-complex nature requiring the performance of no more than simple, routine, tasks." (*Id*. at 30).

Based on the record, the ALJ determined at step four that Plaintiff was unable to complete past relevant work as a security guard.  (AR at 35-36).  As to step five, however, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform other jobs available in the national economy. (*Id*. at 36-37).  In support, the vocational expert identified three representative jobs based on Plaintiff's condition, including laboratory equipment cleaner, hospital cleaner, and kitchen helper.  (*Id*. at 36).  Therefore, the ALJ determined Plaintiff has not been disabled as defined in the Social Security Act, since February 1, 2013, through the date of the opinion, based on the application for a period of disability and disability insurance benefits protectively filed on December 7, 2015.  (*Id*. at 37).

## VI.  ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his supplemental security income and disability insurance benefits.  (Doc. No. 1).  Plaintiff raises the following two issues for this Court's review:

> 1.  Whether the ALJ commissioned harmful error by failing to provide the requisite "clear and convincing" reasons for rejecting Plaintiff's psychiatric symptomology evidence of his anxiety; and

> 2.  Whether the RFC was not supported by substantial evidence when it did not include limitations for anxiety.

(Doc. No. 19 at 6-11).

///

6

# VII.  DISCUSSION

### A.  The ALJ considered Plaintiff's anxiety

Plaintiff argues the ALJ improperly rejected his psychiatric symptomology evidence, *e.g.,* that his panic attacks were overwhelming, occurring 4 times a week for 10 to 20 minutes at a time, during the period at issue, and further failed to provide clear and convincing reasons for doing so.  (Doc. No. 19 at 6).  Plaintiff argues such error amounts to harmful error warranting a remand.  (*Id.*).  Plaintiff points to the ALJ's opinion and argues the ALJ only provided a summary, did not discuss Plaintiff's own testimony regarding his anxiety, and the opinion lacked analysis about why the ALJ was rejecting Plaintiff's mental impairments.  (*Id.* at 7-8).  Plaintiff further argues that it was improper for the ALJ to consider evidence that Plaintiff's anxiety was doing better when that statement was directed to a time *after* the closed time period under review.  (*Id.* at 8-9)(emphasis in original).

In response, the Commissioner argues that Plaintiff mischaracterizes the ALJ's findings and the record.  (Doc. No. 20 at 7).  The Commissioner asserts the ALJ did not commit error but instead correctly compared Plaintiff's allegations to the objective medical evidence, including Plaintiff's testimony regarding the effectiveness of the anxiety medication, considered other efforts Plaintiff used to reduce his anxiety, and considered Plaintiff's allegations on his daily activity, including his ability to coach a baseball team.  (*Id.* at 8-9).  The Commissioner refutes Plaintiff's claim that his statement he was doing better occurred after the closed time, arguing that in 2016 Plaintiff said he was doing well thanks to the life change that occurred "over the past year," thereby encompassing the relevant time period.  (*Id.* at 9).

In Reply, Plaintiff faults the Commissioner's "post hoc" analysis, contending this analysis cannot remedy the ALJ's error.  (Doc. No. 21 at 1).  Conceding the ALJ provided detailed overview of Plaintiff's medical evidence in another section of the opinion, Plaintiff re-asserts that providing a summary of medical evidence does not equate to providing clear and convincing reasons for finding the Plaintiff's symptom testimony not credible.  (*Id.* at 2).

An ALJ employs a two-step analysis to determine whether to credit a claimant's "testimony regarding subjective pain."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.

2007).  First, the ALJ assesses "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotations omitted).  If this test is met, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotations omitted).  The clear and convincing reasons standard is "the most demanding required in Social Security cases." *Moore v. Comm. of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002).[4]  The Ninth Circuit has "repeatedly warned that ALJs must be cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (internal citations omitted).   Because the ALJ determined Carrasco suffered from anxiety, the Court must consider whether the ALJ found evidence of malingering and, if not, whether the ALJ offered clear and convincing reasons to reject Carrasco's testimony.

### 1. Malingering

Malingering is not at issue in this case.  The ALJ never expressly, nor implicitly, finds Plaintiff is malingering. (*See generally* AR 17-32).  Instead, the ALJ finds Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent.  (AR at 27).  Thus, the analysis shifts to whether the ALJ provided specific, clear, and convincing reasons to reject Plaintiff's testimony.

### 2.  Specific, Clear and Convincing Reasons to Reject Carassco's testimony

The Commissioner's arguments opposing remand are well taken.  The ALJ issued a 13-page opinion leading to the conclusion to deny Plaintiff's application for disability benefits.  (AR at 25-38).   The ALJ's opinion referenced contradictions, or inconsistencies, in the record supporting the ALJ's finding that Plaintiff's anxiety was mild to moderate, but did not prevent him from working during the operative time period (February 1, 2013 to December 13, 2017).

---

[4] The Court notes the Commissioner's objection to this standard for the record.  Doc. No. 19 at 9, fn. 4.

(*Id.* at 34-35).   Specifically the ALJ wrote, "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of . . . his symptoms, they are inconsistent as set forth below." (*Id.* at 32).   In relevant part as to Plaintiff's mental health, the ALJ then proceeded to identify numerous medical records that detailed inconsistencies, or otherwise noted that Plaintiff preferred conservative treatment and wrote:

> The claimant reported a history of anxiety with panic attacks, which consisted of intermittent shortness of breath and a fear of dying (Exhibit 2F, pp. 34 and 41). However, the claimant also reported he was coaching baseball at Golden West in July 2013 (Exhibit 2F, p. 37). He was later diagnosed with an anxiety disorder (Exhibit 2F, p. 35 and 8F, p. 10). In October of 2015, the claimant reported a stable mood, took his medication regularly, and was alert, orientated, had good eye contact, good insight, clear speech, and thought contact without suicidal ideations or delusions, but appeared anxious (Exhibit 5F, pp. 16-17).

> In May 2016, the claimant reported he was depressed, had lost interest or pleasure in doing things, and felt down, depressed, and hopeless (Exhibit 8F, p. 8). During an associated depression screening, the claimant scored a 14, indicating of moderate depression (Exhibit 8F, p. 8). He was subsequently diagnosed with a major depressive disorder, recurrent, moderate (Exhibit 8F, p. 10).

> By July 2016, the claimant reported an increase in anxiety. He also reported he walked 2-3 times per week for 45 minutes, used medication, which he found helpful but wanted to wean off, and deep breathing exercise. Although the claimant reported difficulty in crowd, he was able to calm himself down and had committed his life to Jesus, which had been a very significant coping tool for him in the past year. He also reported he no longer felt depressed (Exhibit 8F, p. 19).

> The claimant reported his anxiety occurred daily, impaired his relationships, and interfered with his work (Exhibit 9F, p. 2 and 13F, p. 14). Regarding the claimant's depression, he consistently denied being depressed or feeling down through most of 2017 (Exhibit 13F, pp 4-43).

> In May 2016, consultative examiner, Lance A. Portnoff, Ph.D., conducted a comprehensive mental evaluation (Exhibit 7F). The claimant's chief complaints were anxiety, panic attacks difficulty breathing, spina bifida occulta, arthritis in the back, and difficulty standing and bending (Exhibit 7F, p. 1). The claimant reported some germaphobia issues, experienced suicidal ideations occasionally, and had panic attacks 4-5 times per week (Exhibit 7F, p. 1). The claimant was married, had four children, and a tenth grade education, with some childhood learning disabilities (Exhibit 7F, p. 2). Upon mental status examination, the claimant's speech was spontaneous and prompt, his content of thought was appropriate to the situation, and his affect, as expressed in speech

and demeanor, was characterized by mild to moderate, flattened depression.  He was fully orientated, could only remember 1/3 item after several minutes and had difficulty with simple calculations (Exhibit 7F, p. 3).  His social judgment and insight were adequate and . . . had a good fund of knowledge (Exhibit 7F, pp. 3-4). Dr. Portnoff diagnosed claimant with a panic disorder, unspecified depressive disorder, and obsessive-compulsive disorder (Exhibit 7F, p. 4).

(*Id.* at 34-35).

As detailed above, the ALJ noted that the Plaintiff reported a history of anxiety with panic attacks, and fear of crowds.  (*Id.* at 34).  However, and most significantly, when evaluating Plaintiff's claim of anxiety, the ALJ noted Plaintiff coached baseball in July 2013, which occurred during the operative time when Plaintiff was alleging his anxiety was keeping him from working.  (*Id.* at 31, 34, 420).  It was proper for the ALJ to consider activities that are not consistent with degree of limitation alleged.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)(stating ALJ may properly consider inconsistencies between testimony and activities). Coaching a baseball team directly contradicts the alleged inability to interact with others or be around groups of people.

The ALJ's order further noted Plaintiff took medication for anxiety and found the medication helpful.  (AR at 34, 420, 422, 571).   Thus, it was reasonable for the ALJ to conclude Plaintiff's anxiety was not disabling because it was treatable with medication.  The ALJ's order also pointed out Plaintiff's stated desire to get off the anxiety medication.  (AR at 34, 571). Progress notes dated July 11, 2016, during the operative time, cited to by the ALJ in his opinion, note that Plaintiff took Xanax in the past and was currently taking Lorazepam, which had been "quite helpful."  Plaintiff acknowledged he also tries "deep breathing exercises" and stated his ultimate goal is to "get off the medication."  (AR at 571).  Plaintiff further acknowledged his faith has been a very significant coping tool for him during the past year.  (*Id.*).   Thus, the ALJ's opinion provides clear and convincing reasons, supported by the record, showing Plaintiff's anxiety was not all-disabling, the anxiety medication helped him, and he was trying other coping mechanisms, such as breathing exercises, as well.  This is a permissible inference based on the record.  *See Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of

1    'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an

2    impairment"); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective

3    pain complaints where petitioner's "claim that she experienced pain approaching the highest level

4    imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

5    Despite Plaintiff's reported and documented anxiety, the record reflects Plaintiff was coping with

6    it and functioning with minimal and conservative treatment.  (*See also* AR at 34, 539-543).

7         Although Plaintiff's counsel contends Plaintiff's breathing exercises and overcoming due

8    to faith occurred outside of the relevant time, the Court is not persuaded by this argument. (*See*

9    Doc. No. 19 at 9).  The medical records in which Plaintiff recognizes breathing exercises and that

10   his faith was helping his depression and anxiety, cited to by the ALJ, fall squarely within the

11   operative time.  (*Supra* at 8) (referencing medical record dated July 1, 2013).  Further, the

12   transcript of the hearing reflects that Plaintiff understood he was testifying about the relevant

13   time.  (*See* AR at 66)(referring to the year 2016, plaintiff testified that he would calm himself

14   down during by speaking encouraging words during an anxiety attack and he learned to "manage

15   it.").  Repeatedly throughout the transcript of the hearing, Plaintiff testified to learning to manage

16   his anxiety.  (AR at 57-58, 60, 66).  It was reasonable for the ALJ to observe and consider

17   Plaintiff's conservative mental health treatment.  *Honeycutt v. Saul*, 2021 WL 9789807 *11(E.D.

18   Cal. March 16, 2021)(citing 20 C.F.R. 404.1529(c)(3)(5)(course of treatment is properly

19   considered when evaluating symptom testimony).

20        The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

21   claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

22   *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  Here, the ALJ provided specific examples

23   of why he found Plaintiff's symptom testimony inconsistent.  Based on the foregoing, the Court

24   finds the ALJ articulated clear and convincing reasons supported by substantial evidence for

25   discrediting Plaintiff's subjective claims of anxiety.  The ALJ has therefore satisfied his burden

26   under *Lingenfelter.*

27        **B.  The RFC was supported by substantial evidence**

28        Related to the first issue, Plaintiff argues the ALJ's failure to include his limitations

caused by his anxiety *during the closed period* in the RFC constituted harmful error.  (Doc. No. 19 at 10-11) (emphasis in original).   Plaintiff argues that the record contains substantial evidence that Plaintiff as unable to interact with co-workers and the public and doing so would trigger panic attacks to occur at least 4 times a week for 20 minutes at a time.  (*Id.* at 11).  Plaintiff asserts that the ALJ may only rely on the vocational expert's opinion if the hypothetical posed included all the claimant's limitations.  (*Id.*).   Here, because the RFC did not include these anxiety-based limitations, Plaintiff contends it was erroneous for the ALJ to rely on the vocational expert's testimony.

In response, the Commissioner again asserts that Plaintiff mischaracterizes the ALJ's opinion because the vocational expert was asked hypotheticals that included limitations Plaintiff now argues the vocational expert and ALJ did not consider.  (Doc. No. 20 at 10).  The Commissioner notes that the ALJ asked the vocational expert about a hypothetical person who could tolerate only occasional interaction with coworkers and the public, and the vocational expert testified that person could work as a laboratory equipment cleaner, hospital cleaner, and kitchen helper.  (*Id*. at 11).   Summarizing Plaintiff's argument, the Commissioner contends Plaintiff believes the ALJ should have asked the vocational expert about a hypothetical person who could only have "limited to occasional contact with the public and co-workers," based on Dr. Portnoff's opinion.  (*Id*.).  However, the Commissioner properly notes that Dr. Portnoff's opinion did not support such limitations and instead concluded Plaintiff had "mild limitations" with his ability to interact with others due to his anxiety.  (*Id*.)(citing AR 544).

Plaintiff's argument that the ALJ did not include all of Plaintiff's limitations in RFC can only prevail if the ALJ's RFC is not supported by substantial evidence.  In other words, for Plaintiff to prevail on this RFC claim, to the extent it did not include limitations posed by anxiety, he would have to prevail on his first claim set forth above, *e.g.* that the ALJ did not support his decision to discount Plaintiff's anxiety symptomology with clear and convincing evidence.  As set forth above, the ALJ supported his decision that the anxiety was not completely disabling for several reasons, cited to in the record, or otherwise set forth clear and convincing reasons for discounting the level of severity of anxiety as reported by Plaintiff.

The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). If the hypothetical posed to the vocation expert contains all the limitations the ALJ found credible and supported by substantial evidence in the record, then the ALJ's reliance on testimony the vocational expert gave in response is proper. (*Id.*)(internal citations omitted). An ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

As set forth *supra*, the ALJ determined Plaintiff's RFC as follows:

> perform medium work as defined by 20 CFR 404.1567(c) and 416.967(c). The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. He would be capable of performing jobs of a non-complex nature requiring the performance of no more than simple, routine, tasks.

(AR at 30). The ALJ reached this RFC based on the record in its entirety.

To the extent Plaintiff contends the ALJ did not ask the vocational expert to consider any limitation on Plaintiff's interaction with coworkers caused by his anxiety, the argument is not well taken. To the contrary, the record shows the ALJ accounted for Plaintiff's anxiety and asked the vocational expert questions based on a hypothetical person with anxiety. (*See generally id.* at 69-79). The ALJ posed a hypothetical question to the vocational expert and asked whether a person would be employable who missed two days a month from work on an unscheduled basis due to anxiety symptoms to which the vocational expert testified this person would not be employable. (*Id.* at 76). Nevertheless, the ALJ's conclusion was a finding of non-disabled because the ALJ discounted Plaintiff's anxiety symptomology for numerous reasons set forth above, *e.g.* during the same time period Plaintiff alleged anxiety, he coached a baseball team; took medication that reportedly helped him; and also engaged in self-help techniques such as a breathing and his faith largely helped his symptoms. The ALJ's reliance on the vocational

13

1   expert's testimony was proper because the ALJ relied on a hypothetical posed to the vocational

2   expert that contained the limitations the ALJ found supported by substantial evidence.

3          Reference to Dr. Portnoff's opinion fairs no better for Plaintiff.  Plaintiff is not asking the

4   court whether the ALJ properly weighed the medical opinion evidence but instead is challenging

5   the RFC.  The record shows the ALJ gave substantial weight to Dr. Portnoff's opinion.  (AR at

6   35).  Plaintiff fails to identify any limitations opined by Dr. Portnoff that were improperly

7   excluded from the RFC and the resulting hypothetical posed to the vocational expert.  Instead, Dr.

8   Portnoff noted Plaintiff had "mild limitations" with his ability to interact with coworkers and the

9   public and had "no limitations in his ability to maintain regular attendance in the workplace."

10  (*Id.*).  Based on the reasons above, the ALJ developed a proper RFC supported by substantial

11  evidence.

12                          **VIII.  CONCLUSION**

13         A reviewing court should not substitute its assessment of the evidence for the ALJ's.

14  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment

15  as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed above, the

16  ALJ properly considered Plaintiff's anxiety symptomology and the RFC was supported by

17  substantial evidence.  After review, the Court finds the ALJ's decision is supported by substantial

18  evidence and free of harmful legal error.

19         Accordingly, it is **RECOMMENDED**:

20         1.  The district court AFFIRM the decision of the Commissioner of Social Security for the

21  reasons set forth above.

22         2.  The district court direct the Clerk to enter judgment in favor of the Commissioner of

23  Social Security, terminate any pending motions/deadlines, and close this case.

24                          <u>**NOTICE TO PARTIES**</u>

25         These findings and recommendations will be submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

27  days after being served with these findings and recommendations, a party may file written

28  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

                                    14

1  Findings and Recommendations." Parties are advised that failure to file objections within the

2  specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834,

3  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5  Dated:    February 10, 2022

6                                          HELENA M. BARCH-KUCHTA
                                           UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28